Branson *v.* Shinn.

[The Reporter has been furnished with the following opinion delivered by Justice FORD, at the November term, 1828, and referred to by Chief Justice EWING in the case of the City Bank of New York v. Merrit, page 133 of this volume.]

### THOMAS BRANSON v. EZRA SHINN.

The court will superintend, and control the writ of attachment by keeping it within the design and intent of the act of the legislature.   An affidavit of the mere belief of the plaintiff, that the defendant absconds, is not so conclusive on the Court, that it can hear no contrary evidence, nor enquire into the grounds or fairness of such belief.

The law has provided the writ of attachment for creditors, who cannot get the ordinary writ served on a debtor, because he has absconded, and it can be lawfully employed in no other case.   And this court will set aside the writ of attachment, if it appears that the defendant did not leave home with any intent to abscond, that he was in the state when the affidavit was made, and that the plaintiff had no reasonable ground for believing the contrary.

A certiorari was issued from this court, directed to the Court of Common Pleas of the county of Monmouth, removing the

Branson *v.* Shinn.

proceedings had on a writ of attachment. The facts and circumstances of the case are fully disclosed in the opinion of the court, delivered by Justice Ford.

*Wall* for plaintiff in certiorari.

*Ryall & Wood* for defendant.

FORD, J. An attachment was taken out of the Court of Common Pleas of Monmouth county, against the goods and chattels, lands and tenements of Thomas Branson, on an affidavit of Ezra Shinn, that he verily believed the said Branson absconded from his creditors, and was not resident in the state. On the return of the writ, Branson moved to set it aside on affidavits to the following effect. That he resides at New Egypt in the county of Monmouth, where he has kept house for a number of years, having a family of children and his sister for house keeper; that he is a public inn-keeper there, and carries on likewise the trade of cabinet-making by himself and journeymen. That the plaintiff came there from Ohio and made a demand on him of two hundred and thirteen dollars, about which, as he conceived it to be more than was justly due, they were in negociation for about three weeks—that he then gave notice to one Singleton, the attorney in fact for Hannah Shinn of Ohio, who also had a demand against him, that in pursuance of what he had publicly and frequently mentioned before that time, he should set out the next day on a visit to certain relations, and the settlement of some business in the counties of Gloucester and Salem that might detain him a fortnight. That accordingly he took his seat next morning publicly in Mr. Page's stage for Bordentown, along with several other inhabitants of the place, and from thence by the steamboat to Philadelphia, where spending a single day on business, he crossed the river the next day to Camden in Gloucester county, and followed his business into Salem by the stage. That one of his journeymen who accompanied him as far as Philadelphia, returned to his work the next day but one. That on the day of his return, the plaintiff and Singleton called on him to enquire for Branson, and he informed them that he saw Branson cross the river to Camden in New Jersey, in order to take the stage for Woodbury, and he would be at home the following Thursday—that the plaintiff threatened to take out an attachment; whereupon the journeyman as-

Branson *v.* Shinn.

sured him that Branson was not out of the state, and even offered to go for him and have him at home in three days. The plaintiff replied that Branson had given him an advantage and he meant to keep it. That accordingly the next day he had an attachment levied on Branson's property to the appraised value of six hundred and eighty-five dollars, which did not appear to be encumbered by judgment or execution. The plaintiff adduced some evidence *viva voce* in the Common Pleas on his part, which being unwritten was not sent with the proceedings, and which he ought to have brought up by a rule for the purpose, or in some other form, if he deemed it to be material, as the proceeding by certiorari admits of all facts that legally appeared in the court below that can affect the matter of law in dispute. The court of Common Pleas refused to set aside the attachment and thereupon it was removed here by certiorari.

We consider the attachment act to be of great and extensive utility by placing the property of absconding debtors in the immediate custody of the law, as a remedy for the creditors who are unable to serve process on the person of the debtor; but unless the court can superintend and control the writ by keeping it within the design and intent of the act, it may become an engine of great oppression and abuse. There are few persons who do not sometimes in their lives go out of the state, and fewer still among the wealthiest as well as the poorest, who do not usually owe small sums of money; but their excursions are for short times, in the pursuit of business or pleasure, and with intention of returning in a few days. Now it is evident that a man instigated by malice, revenge or hope of undue advantages, might make an affidavit of his *belief,* that such a person absconded from his creditors, and seize the occasion to put a stop to his business, wound his credit, and embarrass the estate of an unsuspecting citizen; nor could he dissolve the smallest attachment above twenty dollars, without giving security in double the amount of his whole personal estate, even where the thought of absconding had never entered his mind, if an affidavit of mere belief that he absconded were so conclusive on the court, that it could hear no contrary evidence, nor enquire into the grounds or fairness of such belief. But the power and duty of the court to enquire into the misuse and abuse of its process, rest on the

most ancient and established principles, and are as applicable to writs of attachment as any other process. This is abundantly confirmed by the cases cited from 2 *Yates* 277; 4 *Yates* 231 ; 3 *Harr. & McHen.* 535 ; 3 *Johns. Cas.* 141; and 16 *Johns.* 7; and as they are not controverted by the plaintiff's counsel, it is necessary only to mention them.

The law has provided the writ of attachment for creditors who cannot get the ordinary writ served on a debtor, because he has absconded; and it can be lawfully employed in no other case. It is plain that it has been used in this instance unnecessarily and improperly, to say the least of it. If the plaintiff wished for an opportunity to commence a suit, why was not the defendant arrested and held to bail during the three weeks of the parties being together and of the defendant being publicly at home? Even at the end of that time he did not depart secretly or clandestinely ; he took his passage in the common conveyance, at the usual time in the morning, along with other citizens of the place, in order to take the steamboat at Bordentown. Nor could it be un unexpected departure from home, to such as had any business with him, for he had spoken of it publicly before he set out. Least of all could it have been unexpected by the plaintiff, for Singleton was expressly told of it the evening before he went. This certainly is not the manner in which debtors abscond, and if the plaintiff believed there was an intent to do it, why did he not have him arrested that night or in the morning? Why lay by and wait for his notified departure, and till the visit was nearly half out, and then fall on his defenceless business and family, ransack his house with an attachment, seize upon their comforts, stop his tavern and trade, and lay his property under inventory, appraisement and custody? It is true that his route lay through Philadelphia, because it was the easiest, cheapest and most commonly used to Camden in New Jersey ; but the plaintiff's belief of his being out of the state was a most unreasonable jealousy, and was sworn to after being assured to the contrary, and not only by an eye witness who saw him cross over to Camden, but one who in confirmation of his veracity, offered to have him at home in two days. The plaintiff need not have avowed that it was his aim to take an advantage ; it was plainly inferable without the

Branson *v.* Shinn.

confession.   It manifestly appears that the defendant did not leave home with any intent to abscond ; that he was in the state when the affidavit was made, and that the plaintiff had no reasonable ground for believing the contrary.   The writ of attachment was therefore improperly employed and must be set aside.

CITED in *City Bk. of New York* v. *Merritt*, 1 *Gr.* 131 ; *Ayres* v. *Bartlett*, 2 *Gr.* 330 ; *N. J. R. R. & Tr. Co.* v. *Suydam*, 2 *Harr.* 42 ; *Day* v. *Bennett*, 3 *Harr.* 289 ; *Phillipsburgh Bank* v. *Lackawana R. R. Co*, 3 *Dutch.* 208 ; *Kugler* v. *Shreve*, 4 *Dutch.* 133.